UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THE ESTATE OF LOUISE CHRISTMAN                CIVIL ACTION

VERSUS                                                              NO. 20-739-BAJ-RLB

LIBERTY MUTUAL INSURANCE
COMPANY

## ORDER

Before the Court is Plaintiff's Motion to Compel Production of Documents Responsive to Plaintiff's First Request for Production of Documents, Motion to Disqualify Defendant's Counsel as Counsel for FourSeventy Claim Management, and Motion to Continue the Court's Discovery Scheduling Order Deadline ("Motion to Compel"). (R. Doc. 20). The motion is opposed. (R. Doc. 22).

### I.     Background

On September 4, 2020, James Christman, the executor of his deceased mother Louise Christman's estate, initiated this bad faith insurance action on behalf of the Estate of Louise Christman ("Plaintiff"), naming as defendant Liberty Mutual Insurance Company ("Liberty Mutual" or "Defendant"). (R. Doc. 1-2 at 2-4). Plaintiff alleges that Louise Christman's house located in Lake Charles, Louisiana (the "subject property"), which is insured by Liberty Mutual under a homeowners insurance policy, was damaged during a severe thunderstorm with heavy hail and wind on May 26, 2020. (R. Doc. 1-2 at 2). Plaintiff specifically alleges that "hail ripped paint off the house, knocked over brick fence columns, damaged air conditioner units, and a door," and left the property's "high-quality slate roof shingles greatly compromised with breaks, cracks, indentions, and loosened the shingles so much that they would blow upward whenever there was wind." (R. Doc. 1-2 at 2). Plaintiff alleges that in the process of adjusting the claim for

coverage under the homeowners insurance policy, Liberty Mutual acted in bad faith by finding no hail damage and only covering $1,032.32 to repair the fence. (R. Doc. 1-2 at 2-3).

On August 26, 2020, Hurricane Laura struck Lake Charles. Plaintiff alleges that the hurricane caused the compromised roof to fail, leaving the subject property damaged by rainwater and uninhabitable. (R. Doc. 1-2 at 3-4). Plaintiff notes that "nearby neighbors who had their roofs replaced following the May 2020 hailstorm were protected from Hurricane Laura." (R. Doc. 1-2 at 3). Among other things, Plaintiff seeks recovery of bad faith damages under La. R.S. 22:1973(C). (R. Doc. 1-2 at 4).

On October 16, 2020, three days after sending a settlement demand with respect to "the main house roof portion," Plaintiff sent Liberty Mutual an estimate of sought repairs (including demolition, remediation, and roofing) totaling $114,149.34. (R. Docs. 1-3, 1-4).

Liberty Mutual removed the action on October 29, 2020, asserting that this Court has diversity jurisdiction under 28 U.S.C. § 1332. (R. Doc. 1). Plaintiff subsequently filed an Amended Complaint that includes a claim for bad faith damages under La. R.S. 22:1892. (R. Doc. 9).

The Court issued a Scheduling Order setting, in relevant part, the deadline to complete non-expert discovery on June 1, 2021, and for trial to commence on April 11, 2022. (R. Doc. 10). The Court has also issued a Protective Order governing the exchange of confidential information in this action. (R. Doc. 15).

On April 29, 2021, Plaintiff filed the instant Motion to Compel. (R. Doc. 20). Plaintiff represents that the parties met and conferred by telephone on February 12, 2021 regarding various discovery disputes, and that this conference was followed-up by various telephone and e-mail communications. (R. Doc. 20-1 at 18). Plaintiff seeks an order (1) compelling the deposition

of the Liberty Mutual claims manager Jeanna Deivanayagam; (2) compelling the production of documents involving the Liberty Mutual employee Nicholas Lenoir in response to Plaintiff's Interrogatory No. 4 and Request for Production No. 7; (3) compelling the production of information regarding third-party homeowner insurance policy claims made to Liberty Mutual in response to Plaintiff's Interrogatory No. 18 and 19, and Request for Production Nos. 18 and 19; (4) compelling the production of redacted reserves information and claims notes entered by Ms. Deivanayagam in response to Plaintiff's Request for Production No. 8; (5) disqualifying Liberty Mutual's counsel as counsel for the non-party FourSeventy Claim Management ("FourSeventy") for the purposes of responding to Plaintiff's subpoena to FourSeventy; and (6) extending the discovery deadline for the purposes of obtaining the foregoing discovery.

Liberty Mutual opposes the motion on the bases that (1) Ms. Deivanayagam has no relevant testimony to provide; (2) all information and documents concerning Mr. Lenoir has been produced; (3) information regarding third-party claims is irrelevant; (4) information pertaining to reserves information is irrelevant and is otherwise protected by the work product doctrine; (5) Plaintiff has failed to establish a conflict of interest and FourSeventy has produced all responsive non-privileged information sought; and (6) Plaintiff has not established good cause for a continuance of the discovery deadline. (R. Doc. 22).

**II.    Law and Analysis**

    **A.    Legal Standards**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 30 of the Federal Rules of Civil Procedure governs depositions by oral examination. "A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). "[A] party seeking a protective order to prevent or postpone a deposition must show good cause and the specific need for

4

protection." *Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002)(citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)).

**B.    Analysis**

**1.    Deposition of Jeanna Deivanayagam**

Plaintiff seeks an order compelling the deposition of the Liberty Mutual claims manager Jeanna Deivanayagam. (R. Doc. 20-1 at 6-7). Plaintiff asserts that "Liberty Mutual refuses to allow this deposition, arguing that she was not involved in the denial of the claim, but this assertion is very false, as evidenced by Liberty Mutual claim notes from the wind and hailstorm claim produced in which she is very much involved and logs notes at least 4 (four) times, including a note regarding 'claim strategy' and a note regarding size of the hail to be '1.5 on the DOL.'" (R. Doc. 20-1 at 70) (citing R. Doc. 20-2).

Liberty Mutual opposes this relief on the basis that Ms. Deivanayagam has no relevant testimony to provide. Among other things, Liberty Mutual argues that Ms. Deivanayagam had no involvement in the partial denial of Plaintiff's claim related to the May 26, 2020 storm and her role as a manager to the claims adjuster, Stephen Vaneau, does not establish a basis for subjecting her to a deposition in this action. (R. Doc. 22 at 8-10). Liberty Mutual also represents that the parties did not discuss the deposition of Ms. Deivanayagam prior to the filing of the Motion to Compel. (R. Doc. 22 at 16 n.8).

Plaintiff does not indicate whether she has sought to secure Ms. Deivanayagam's deposition through a deposition notice and subpoena. Nevertheless, the Court finds that the deposition falls within the scope of discovery. There is no dispute that Ms. Deivanayagam is identified as the author of various claims log entries, she supervised the claims adjuster who adjusted Plaintiff's claims, and she has knowledge of the investigation. (*See* R. Doc. 21-1 at 1-2).

5

Plaintiff need not rely on representations by Mr. Vaneau or defense counsel regarding Ms. Deivanayagam's role in the adjustment of Plaintiff's claim. The deposition is relevant for the purpose of securing a statement, under oath, regarding Ms. Deivanayagam's involvement and personal knowledge with respect to the adjustment of Plaintiff's claim. This single deposition is proportional to the needs of this case given the amount in controversy compared to the relatively slight burden of the deposition.

**IT IS ORDERED** that Plaintiff's motion is **GRANTED** with respect to the deposition of Jeanna Deivanayagam. Plaintiff may notice and secure the deposition of Jeanna Deivanayagam within **30 days** of the date of this Order, or as otherwise agreed upon by the parties.

### 2. Discovery Pertaining to Nicholas Lenoir

Plaintiff seeks an order compelling the production of documents involving the Liberty Mutual employee Nicholas Lenoir in response to Plaintiff's Interrogatory No. 4 (which seeks the identification of employees who inspected the insured property and information regarding the inspections) and Request for Production No. 7 (which, in relevant part, seeks all correspondence, communications, and reports involving Mr. Lenoir). (R. Doc. 20-1 at 7-9). Plaintiff represents that while Mr. Lenoir inspected the subject property on October 1, 2020 following Hurricane Laura, defense counsel confirmed by email on February 11, 2021 "that Mr. Lenoir's only purpose in coming to the property on 10/1 was to accompany the engineer during his inspection. Mr. Lenoir did not perform an inspection of the engineer and he did not draft any report." (R. Doc. 20-1 at 8; *see* R. Doc. 20-5). Plaintiff represents that Liberty Mutual later produced a "219-page inspection report" by Mr. Lenoir on April 8, 2021, just one day before his deposition. (R. Doc. 20-1 at 8-9; *see* R. Doc. 20-5). Plaintiff suggests that certain redacted documents appearing

6

on Liberty Mutual's privilege log may contain information involving Mr. Lenoir and should be ordered produced. (R. Doc. 20-1 at 9).

In opposition, Liberty Mutual represents that Mr. Lenoir testified at his deposition on May 6, 2021 that he had no involvement in the May 26, 2020 storm-related claim and that he gathered photo documentation and property sketches in his role as an initial field adjuster assigned to Plaintiff's Hurricane Laura claim. (R. Doc. 22 at 10; *see* R. Doc. 22-3). Mr. Lenoir testified that he did not complete a formal report or estimate of damages, which was prepared for the Hurricane Laura claim by Jacob Grindstaff. (R. Doc. 22 at 11; *see* R. Doc. 22-3). Liberty Mutual represents that its counsel became aware, during Mr. Lenoir's deposition preparation, that the photographs and sketches had inadvertently not been produced and produced those documents. (R. Doc. 22 at 11).

There is no dispute that Plaintiff deposed Mr. Lenoir on May 6, 2021, which was after the production of the investigative materials produced in the context of adjusting Plaintiff's Hurricane Laura claim. (R. Doc. 22-3). Plaintiff does not identify any testimony provided by Mr. Lenoir indicating that Liberty Mutual has not produced any correspondence, communications, or reports involving Plaintiff's May 26, 2020 storm-related claim that has not already been produced. Indeed, Liberty Mutual represents that "no additional documents prepared by" Mr. Lenoir exist. (R. Doc. 22 at 11). Given this representation, the Court will not compel further responses to Interrogatory No. 4 or Request for Production No. 7. Liberty Mutual is reminded, however, that it has a duty to supplement its responses to the extent necessary. *See* Fed. R. Civ. P. 26(e).

**IT IS ORDERED** that Plaintiff's motion is **DENIED** with respect to discovery pertaining to Nicholas Lenoir.

7

### 3. Third-Party Homeowners Insurance Policy Claims

Plaintiff seeks an order compelling the production of information regarding third-party homeowners insurance policy claims made to Liberty Mutual as sought in Plaintiff's Interrogatory No. 18 and 19 (collectively seeking information with respect to claims made on other parties regarding the wind and hailstorm occurring on May 26, 2020 in both Texas and Louisiana and the outcome of those claims, including all claims involving Stephen Vaneau and Daniel Guilbeau), and Request for Production Nos. 18 and 19 (collectively seeking the production of all documents and correspondence related to claims made on other parties regarding the wind and hailstorm occurring on May 26, 2020 in both Texas and Louisiana, including all claims involving Mr. Vaneau and Mr. Guilbeau). (R. Doc. 20-1 at 9-12). Plaintiff represents that Liberty Mutual objected to these discovery requests on the bases of irrelevance, undue burden, and overbreadth. (R. Doc. 20-1 at 10).

Plaintiff asserts that the information sought is relevant to determine Liberty Mutual's awareness of the storm, potential systematic denials of coverage, or a singling out of Plaintiff's claim in light of the costs of asbestos shingle removal. (R. Doc. 20-1 at 11-12). Plaintiff asserts that "at the bare minimum, the number of May 26, 2020 storm roofing claims made to Liberty Mutual that were accepted and denied" is relevant information sought by the discovery requests. (R. Doc. 20-1 at 11).

In opposition, Liberty Mutual argues that there is no dispute that the May 26, 2020 storm affected the Lake Charles area, and that the requests for "all documents and correspondence" regarding all claims made to Liberty Mutual in both Texas and Louisiana is overly burdensome and irrelevant. (R. Doc. 22 at 6-7). In short, Liberty Mutual argues that the "existence of other insurance claims on other properties – much less insurance claims in other neighborhoods, cities,

8

and states on properties with different types/ages of rooves – does not have any bearing on whether plaintiff's particular rooves sustained hail damage" or on whether Liberty Mutual acted arbitrarily and capriciously in partially denying Plaintiff's May 26, 2020 storm-related claim. (R. Doc. 22 at 7). Notably, Liberty Mutual represents that it paid Plaintiff's asbestos remediation company $96,370.12 to replace the main dwelling roof in the context of Plaintiff's Hurricane Laura-related claim, and that Plaintiff has not submitted any evidence that the parties were aware of any potential for asbestos remediation costs in the context of the adjustment of the May 26, 2020 storm-related claim. (R. Doc. 22 at 8).[1]

The Court sustains Liberty Mutual's objections based on irrelevance and overbreadth. Plaintiff has not demonstrated that Liberty Mutual's positions with respect to other insurance policies in other legal proceedings have any relevance to the claims in this action. The Court is aware that in the context of Hurricane Katrina insurance litigation, certain decisions ordered the production of information and documents regarding other Katrina-related claims in limited geographical areas. *See Tomlinson v. Allstate Indem. Co.*, No. 06-617, 2007 WL 404698 (E.D. La. Feb. 1, 2007) (upholding magistrate judge's order compelling Allstate to produce list of all lawsuits filed against it by Jefferson Parish homeowners as a result of Hurricane Katrina); *Dudenhefer v. State Farm Fire & Cas. Co.*, No. 06-4380, 2007 WL 1521018, at *3 (E.D. La. May 23, 2007) (affirming magistrate judge's order requiring State Farm to produce a list of all claims and/or lawsuits made as a result of Hurricane Katrina in St. Bernard Parish in which bad faith was alleged); *Parent v. State Farm Fire and Cas. Co.*, No. 06-2362, 2007 WL 1651990 (E.D. La. 2007) (upholding magistrate judge's order compelling State Farm to produce, among

---

[1] Plaintiff's pre-removal estimate does not contain a line-item estimate for asbestos removal. (*See* R. Doc. 1-4). Furthermore, Plaintiff's original Petition and Amended Complaint refer to the roof as a "slate tile roof" and do not reference asbestos. (R. Doc. 1-2 at 2-4; R. Doc. 9). Plaintiff has submitted no evidence supporting the assertion that Liberty Mutual may have singled out Plaintiff's claims for denial based on projected asbestos shingle removal costs.

9

other things, a list of insureds within one mile of the plaintiff's residence and claims relating to Hurricane Katrina). The foregoing decisions dealt with how an insurer was handling claims in the same geographic area caused by the same catastrophic event. Those cases are distinguishable, however, because the discovery requests at issue in this action are not geographically limited in scope.[2] Furthermore, this district has recognized that discovery of prior instances of claims of bad faith is not relevant to whether an insurer acted with bad faith in the instant matter. *See Haydel v. State Farm Mutual Auto. Ins. Co.*, No. 07-939, 2009 WL 10679319, at *7-8 (M.D. La. July 16, 2009) (concluding that prior actions and claims for bad faith were irrelevant and noting that they were not discoverable absent allegations of violations of state unfair trade practices law or general business patterns of bad faith violations).

**IT IS ORDERED** that Plaintiff's motion is **DENIED** with respect to third-party homeowners insurance policy claims.

### 4.  Redacted Reserves Information and Claims Notes

Plaintiff seeks an order compelling the production of redacted reserves information and claims notes entered by Jeanna Deivanayagam in response to Plaintiff's Request for Production No. 8 (seeking production of claims notes in general). (R. Doc. 20-1 at 12-15). Plaintiff specifically seeks the redacted amount of reserves dated June 1, 2020, and Ms. Deivanayagam's claims note dated September 1, 2020 and labeled as "strategy" in the privilege log. (R. Doc. 20-1 at 12-13; *see* R. Doc. 20-2 at 1). It appears that Plaintiff is also seeking any other reserves information withheld on the privilege log. (R. Doc. 20-1 at 13-14).

---

[2] To be clear, Plaintiff's discovery requests seek information related to all claims in Texas and Louisiana without reasonable geographical limitation. Plaintiff did not agree to limit the scope of these requests prior to filing the instant motion.

In opposition, Liberty Mutual argues that the reserves information sought is irrelevant because, in resolving Plaintiff's bad faith claim, the Court must determine whether Liberty Mutual legitimately disputed coverage or, alternatively, arbitrarily and capriciously denied coverage. (R. Doc. 22 at 11-12). Liberty Mutual further argues that the information sought is protected under the work product doctrine and, at the most, the Court should only compel the production of reserves information as it relates to the May 26, 2020 storm-related claim prior to the filing of this lawsuit. (R. Doc. 22 at 12-13).

The Court agrees with Plaintiff that the reserves information is relevant to Plaintiff's bad faith claims. *See Harris Chevrolet, Inc. v. Hanover Ins. Co.*, No. 06-849, 2008 WL 11351443, at *3 (M.D. La. Feb. 28, 2008) ("This matter is a first-party suit of an insured against its insurer on an alleged bad faith claim. Therefore, the production of the documents relating to the loss reserves is within the scope of discovery, and is relevant to this matter."); *see Meador v. Starr Indem. & Liab. Co*., No. 19-2378, 2020 WL 8256370, at *3 (E.D. La. Sept. 1, 2020) (citing cases); *but see Pain Clinic, Inc. v. Bankers Ins. Co.*, No. 06-4572, 2007 WL 9780346 (E.D. La. Mar. 19, 2007) (reserves information is not discoverable because reserves are not relevant to whether an insurer's investigation is reasonable, or an insurer acted arbitrarily or capricious). In the absence of any argument by Liberty Mutual, the Court also finds Ms. Deivanayagam's claims note labeled "claim strategy" to be facially relevant to Plaintiff's claims.

Liberty Mutual also argues that its reserves information is protected by the work product doctrine because it updated its reserves after the filing of suit on September 4, 2020, with the assistance of legal advice from counsel. (R. Doc. 22 at 12). Liberty Mutual seeks an order precluding it from having to produce reserves information updated after Plaintiff filed suit and as

11

the information relates to claims made with respect to Hurricane Laura and Hurricane Delta. (R. Doc. 22 at 13).

Rule 26(b)(3) of the Federal Rules of Civil Procedure restricts a party's ability to obtain work product from an opponent during discovery. Work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Rule 26(b)(3) distinguishes between "ordinary" and "opinion" work product. "Ordinary" work product is discoverable where it otherwise falls within the scope of discovery and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii). "Even if the discovering party is able to show substantial need and undue hardship, opinion work product merits special protection from discovery pursuant to Rule 26(b)(3)(B)." *Lassere v. Carroll*, No. 13-5430, 2014 WL 7139138, at *4 (E.D. La. Dec. 15, 2014); *see* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of [trial preparation] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). Courts have nevertheless held that opinion work product becomes subject to disclosure when "mental impressions are at issue in a case and the need for the material is compelling." *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998) (citations omitted).

Liberty Mutual's privilege log has various entries concerning the topic of "reserves" for which there are no given dates or authors/creators of the information. (*See* R. Doc. 20-6). It is, therefore, impossible for the Court to discern, based on the privilege log as presented, whether

any given entries post-date the initiation of this litigation on September 4, 2020, concern only the May 26, 2020 storm-related claims (as opposed to claims concerning Hurricane Laura or Hurricane Delta), and/or involve any opinion work product.

The Court agrees with Liberty Mutual, however, that to the extent reserves information does not involve the May 26, 2020 storm-related claim or is opinion work product, it is respectively irrelevant or protected as opinion work product. *See Miller v. Favre*, No. 11-615-JJB, 2012 WL 6212793, at *2 (M.D. La. Oct. 22, 2012) ("Defendant has shown that the withheld claim file log notes were created in anticipation of and/or during litigation and reference attorney opinions, summaries, and litigation strategy. Plaintiffs' conclusory assertions that they cannot establish the defendants' arbitrary and capricious conduct without the withheld documents is insufficient to outweigh the high degree of protection afforded to an attorney's mental impressions, opinions and legal theories."); *see also Meador v. Starr Indem. & Liab. Co.*, No. 19-2378, 2020 WL 8256370, at *4 (E.D. La. Sept. 1, 2020) ("Where the reserves have been established based on legal input, the results and supporting papers most likely will be work-product and may also reflect attorney-client privilege communications. Whether aggregate or individual, case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in anticipation of litigation, and consequently, they are protected from discovery as opinion work-product.") (quoting *Ohio Management, L.L.C. v. James River Ins. Co.*, No. 06-0280, 2006 WL 198562, at *2 n. 10 (E.D. La. July 13, 2006)).

Given the record, the Court will compel Liberty Mutual to produce, in addition to the September 1, 2020 claims entry by Ms. Deivanayagma,[3] all reserves information as it relates to

---

[3] Liberty Mutual does not raise any arguments with respect to its inclusion of this document on its privilege log.

13

the May 26, 2020 storm-related claim to the extent it does not contain purported opinion work product (i.e., mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation). Liberty Mutual must then update its privilege log to identify any claims notes entries still withheld. The updated privilege log must identify whether the reserves information was withheld on the basis that it does not relate to the May 26, 2020 storm-related claim and/or on the basis that it is opinion work product. The updated privilege log must also include the date and author/creator of the reserves information being withheld.

**IT IS ORDERED** that Plaintiff's motion is **GRANTED IN PART** with respect to withheld reserves information and the September 1, 2020 claims entry by Ms. Deivanayagma. Liberty Mutual must provide the withheld information, or an updated Privilege Log, within **14 days** of the date of this Order.

### 5. Disqualification of Liberty Mutual's Counsel

Plaintiff seeks an order disqualifying Liberty Mutual's counsel with respect to the representation of the non-party FourSeventy for the purposes of responding to Plaintiff's subpoena to FourSeventy. (R. Doc. 20-1 at 15-17). Liberty Mutual argues that Plaintiff has failed to establish a conflict of interest and, at any rate, FourSeventy has produced all responsive non-privileged information sought. (R. Doc. 22 at 13-16).

Motions to disqualify counsel are "generally disfavored" and "require a high standard of proof" so as to not deprive a party of its chosen counsel. *Mose v. Keybank Nat. Ass'n*, No. 11-162, 2011 WL 2790199, at *2 (M.D. La. July 14, 2011) (citing *Fed. Deposit Ins. Corp. v. United States Fire Ins. Co.*, 50 F.3d 1304 (5th Cir.1995); *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 3845228, at *3 (E.D. La. Aug. 13, 2008)).

"As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976); *Areizaga v. ADW Corp.*, No. 14-2899, 2015 WL 13567554, at *4 (N.D. Tex. May 19, 2015) ("The general rule is that non-clients have no standing to bring a motion to disqualify the other side's counsel."). "The underlying rules relating to attorney conflicts of interest are designed to allay any apprehension a client may have in frank discussion of confidential information with his attorney." *Yarn Processing*, 530 F.2d at 90. "To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist." *Id.*

Even if the Court were to find that Plaintiff has standing to raise the issue of disqualification of FourSeventy's counsel based on an alleged conflict, there is no convincing evidence that any such conflict exists. At most, without any specific citation or quotation of testimony, Plaintiff asserts that "Liberty Mutual has already placed blame [on] Fourseventy's inspector for not documenting more photos of the subject property's hail damage in Liberty Mutual adjuster's deposition, which the adjuster admitted could have made a difference in his adjustment of the claim." (R. Doc. 20-1 at 16). Liberty Mutual responds that this statement "is simply not true" and that the deposition testimony makes it clear that both Liberty Mutual and FourSeventy "determined that plaintiff's property did not sustain hail damage." (R. Doc. 22 at 14 n. 6). The Court finds no basis for disqualifying FourSeventy's counsel based on Plaintiff's disputed assertions.

To the extent that Plaintiff seeks an order compelling compliance with the subpoena, this relief is also unavailable. Plaintiff makes no plausible argument that FourSeventy's responses

15

and objections to the subpoena (R. Doc. 20-10) were untimely under Rule 45(d)(2)(B).[4] Plaintiff has not attached a copy of the subpoena, identified the district where compliance is required, produced proof of service under Rule 45(b)(4), or provided any indication that FourSeventy has been provided notice of a motion to compel. It is, therefore, unclear when the subpoena was personally served and whether this is even the proper court for seeking an order compelling FourSeventy to comply with the subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."). Moreover, Plaintiff does not identify in any way the extent to which FourSeventy's responses and objections to the subpoena (R. Doc. 20-10) and/or FourSeventy's privilege log (R. Doc. 22-4) are deficient in any way.

**IT IS ORDERED** that Plaintiff's motion is **DENIED** with respect to the disqualification of FourSeventy's counsel and any additional relief sought with respect to the subpoena served on FourSeventy.

---

[4] Plaintiff appears to argue that it its original attempts at service of the subpoena by email and certified mail satisfied the service requirements of Rule 45(b)(1). The Court disagrees. Rule 45 provides that "[a]ny person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person . . . ." Fed. R. Civ. P. 45(b)(1). "The Fifth Circuit has held that personal service of a subpoena is required." *Bonnecaze v. Ezra & Sons, LLC*, No. 14-1774, 2016 WL 1268339, at *3 (E.D. La. Mar. 31, 2016) (citing *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003)) ("[T]he rule indicates that proper service requires . . . personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance."); *see also Scottsdale Ins. Co. v. Education Mgmt., Inc.*, No. 04-1053, 2007 WL 2127798, at *3 (E.D. La. July 25, 2007) ("A majority of courts in various jurisdictions require personal service of a subpoena and will not allow the alternate forms of service.") (citing Wright & Miller, § 2454 (2d ed. 1995) and cases cited therein); *Omikoshi Japanese Rest. v. Scottsdale Ins. Co.*, No. 08-3657, 2008 WL 4829583, at *1 (E.D. La. Nov. 5, 2008) (denying motion to compel compliance with Rule 45 subpoena where subpoena was not personally served).

**6.     Extension of the Discovery Deadline**

Finally, Plaintiff seeks an order extending the discovery deadline for the purposes of obtaining the discovery sought in the instant motion. (R. Doc. 20 at 1). Liberty Mutual opposes this relief. (R. Doc. 22 at 16).

The Court has provided applicable deadlines in this Order to the extent Plaintiff's Motion to Compel has been granted. The Court does not find good cause for an extension of the discovery deadlines in light of the instant motion other than the deadlines already provided within this Order.

**IT IS ORDERED** that Plaintiff's motion is **DENIED** to the extent it seeks an extension of the discovery deadlines in this action.

**III.    Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 20) is **GRANTED IN PART and DENIED IN PART** consistent with the body of this Order. The parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on June 7, 2021.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**